UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN DANIEL RODRIGUEZ-GONZALEZ (A# 240-354-565)<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CENTRAL VALLEY ANNEX,<br><br>Respondent. | No. 1:26-cv-05909 TLN SCR<br><br><u>ORDER AND</u><br><br><u>FINDINGS & RECOMMENDATIONS</u> |

Petitioner is a federal immigration detainee who filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241. This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**FACTUAL AND PROCEDURAL HISTORY**

Petitioner is a native and citizen of Mexico who entered the United States without inspection sometime in 2016. ECF No. 1 at 3, ¶ 12. After immigration officials first detained him in August 2023, an immigration judge ("IJ") granted his release on $9,000 bond. Id. at 4, ¶ 16; see also id. at 26-27 (IJ order). Petitioner's mother paid the bond. Id. at 4, ¶ 16. Petitioner has an employment authorization valid through February 18, 2029, and since his release on bond has worked in the construction, tile installation, and flooring industries. Id. at 3, ¶ 14.

On or about November 7, 2025, Immigration and Customs Enforcement ("ICE") agents detained Petitioner after a traffic stop. ECF No. 7-1 at 2 (Form I-213). The agents did not give

Petitioner notice of changed circumstances or cancellation of bond and did not provide a pre-deprivation hearing. ECF No. 1 at 5, ¶ 21. Petitioner requested and received a post-deprivation bond hearing, but an IJ denied release. ECF No. 1 at 2. Petitioner has no access to the written decision or transcript and is unaware of the basis for the IJ's decision. Id. at 5, ¶ 22.

On August 20, 2025, an IJ ordered Petitioner removed to Mexico and denied his applications for asylum, withholding of removal, and Convention Against Torture ("CAT"). ECF No. 7-4. Petitioner timely appealed the decision to the BIA on September 17, 2025. Id. at 4, ¶ 19. Per his EOIR Case Information Page, https://acis.eoir.justice.gov/en/caseInformation, the BIA dismissed Petitioner's appeal on August 10, 2026.[1] Petitioner remains in immigration detention and is currently detained at the Central Valley Annex immigration detention facility within this judicial district. ECF No. 1 at 2, ¶ 4.

Petitioner filed the instant § 2241 petition on July 28, 2026, raising three claims for relief: (1) Fifth Amendment due process: re-detention without pre-deprivation notice and hearing; (2) post-deprivation custody proceedings did not cure the original violation; and (3) arbitrary and unreasonably prolonged civil detention as applied. Id. at 6-8. Petitioner further maintains that he is subject to discretionary detention under 8 U.S.C. § 1226(a). Id. at 4, ¶ 19. By way of relief, Petitioner seeks immediate release under the same bond and conditions that governed his 2025 release, together with any reasonable reporting conditions. Id. at 8. In the alternative, he requests a bond hearing before an IJ where the government must establish, by clear and convincing evidence, that he is a risk of danger or flight. Id.

Respondent filed a one-page response, stating in full:

> Detention in this case was pursuant to 8 U.S.C. § 1225(b)(2)(A), and Respondents respectfully maintain position that such provision governs here. Respondents acknowledge, however, that Rodriguez Vazquez v. Bostock, 2026 WL 2196424 (9th Cir. July 30, 2026), holds that § 1226(a) governs Petitioner's detention. Petitioner is therefore entitled to seek a custody redetermination hearing before an immigration judge.

[1] The undersigned takes judicial notice of Petitioner's EOIR Case Information. See Fed. R. Evid. 201(b)-(c).

ECF No. 7 at 1. Respondents filed excerpts from Petitioner's A-File, including a form I-213, the IJ's order of removal, and Petitioner's FBI "rap sheet." ECF Nos. 7-1 through 7-4.

**DISCUSSION**

**I. Applicable Detention Statute**

The statutory and regulatory framework governing immigration detention is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Because Petitioner was apprehended within the interior of the United States, his pre-order detention is governed by the discretionary detention scheme at 8 U.S.C. § 1226(a), not the mandatory detention statute 8 U.S.C. § 1225(b)(2). Rodriguez Vazquez, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026).

Petitioner's detention has not yet shifted to 8 U.S.C. § 1231(a), despite the IJ's August 20, 2025, order of removal. That order is administratively final as of the BIA's dismissal of Petitioner's appeal on August 10, 2026. See Ocampo v. Holder, 629 F.3d 923, 926 (9th Cir. 2010) (noting that an order of removal becomes administratively final "upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order") (citing 8 U.S.C. § 1101(a)(47)(B)); see also 8 C.F.R. § 1241.1(a). But as relevant here, the 90-day removal period in which detention is mandatory begins on the latest of the following: (1) "[t]he date the order of removal becomes administratively final"; and (2) "[t]f the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(i)-(ii).

Petitioner has thirty days, until September 9, 2026, to petition the Ninth Circuit for review of the BIA's dismissal of his appeal. 8 U.S.C. § 1252(b)(1). Thus, because the sequencing necessary to trigger the 90-day removal period is not yet complete (i.e., whether Petitioner petitions for review and the Ninth Circuit issues a stay of removal), Petitioner remains subject to pre-order detention under § 1226(a). See Mendoza Cardenas v. Blanche, et al., No. 2:26-CV-01487-MMD-EJY, 2026 WL 2110631, at *2 (D. Nev. July 21, 2026) ("Petitioner is within the

statutory 30-day window to petition [the Ninth Circuit] for review and accordingly the removal period mandating detention has not begun.") (citing 8 U.S.C. § 1252).

Having determined that Petitioner remains subject to discretionary detention under § 1226(a), the undersigned turns next to his due process claims.

**II. Due Process Analysis**

The undersigned liberally construes Counts One and Two of the petition as raising a single procedural due process challenge to Petitioner's re-detention absent pre-deprivation notice and hearing.[2] See Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (courts must construe pro se habeas petitions liberally). The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v Elderidge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

---

[2] The undersigned specifically construes Petitioner's Count Two not as a separate cause of action but as a defense of immediate release as the appropriate remedy for Count One. See ECF No. 1 at 7, ¶ 31 ("Where a pre-deprivation hearing is feasible and constitutionally required, a later hearing does not automatically cure the completed deprivation").

**A. Protected Liberty Interest**

Petitioner's prior release on bond in August 2023 pursuant to § 1226(a) created a liberty interest that is protected by the Due Process Clause. Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [petitioner] have a liberty interest in remaining out of custody on bond."). Respondent does not argue Petitioner's bond was properly revoked pursuant to 8 U.S.C. § 1226(b) or refute Petitioner's assertion that he complied with the terms the IJ imposed on him. ECF No. 1 at 4, ¶ 17. Therefore, the undersigned turns next to the Mathews factors.

**B. Mathews Analysis**

**i. Private Interest**

As noted above, Petitioner has a substantial private interest in remaining free on bond. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Moreover, while released on bond, Petitioner has secured work in the construction and flooring industries. See Morrissey, 408 U.S. at 482 (private interests include the freedom to "be gainfully employed and . . . to be with family and friends and to form the . . . enduring attachments of normal life."). Accordingly, the first factor weighs heavily toward Petitioner.

**ii. Risk of Erroneous Deprivation**

The second Mathews factor concerns "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" Mathews, 424 U.S. at 335. The risk of erroneous deprivation is "considerable" here given that Respondent does not refute that Petitioner was re-detained absent pre-deprivation notice or hearing. Charan S. v. Warden of the California City Det. Facility, No. 1:26-CV-03017-TLN-JDP, 2026 WL 1144158, at *5 (E.D. Cal. Apr. 28, 2026).

The second factor then turns on whether the post-deprivation hearing that Petitioner requested and received after his re-arrest in November 2025 mitigated that initial deprivation of his liberty interest. The record is unclear as to whether an IJ denied Petitioner's request for bond

based on a lack of jurisdiction pursuant to the BIA's then-binding precedent Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025), or based on an express finding that Petitioner presented a risk of danger and/or flight. If the former, then Petitioner would have received no bond hearing at all, and the second factor would conclusively tilt in his favor.

But even if Petitioner received a post-deprivation hearing pursuant to 8 U.S.C. § 1226(a), such a proceeding is not an equivalent remedy for the constitutional violation here. As Chief Judge Nunley explained in a factually similar case involving a court-ordered, post-deprivation § 1226(a) hearing:

> [A] § 1226(a) bond hearing does not replace the process demanded by the Constitution . . . .[T]he bond hearing occurred after Petitioner's detention, so it failed to remedy the initial constitutional violation. The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months. To hold otherwise would lead to absurd results. The Government would have a blank check to unilaterally detain every noncitizen without providing any process and hold them indeterminately without any process until the individual seeks relief from a federal court. Only after a federal judge orders individual relief would the Government be compelled to provide a modicum of process. This would allow the Government to flout their own regulations with the comfort that, only after judicial intervention and expenditure of resources, will they be brought into compliance with federal law. The relief for a constitutional violation cannot be to merely bring the Government into compliance — it must be to restore the liberty that was lost.

Charan S., 2026 WL 1144158, at *6. Moreover, in a generic § 1226(a) hearing, the noncitizen bears the burden of proof. Rodriguez Diaz, 53 F.4th at 1213-14. It cannot then provide an equivalent constitutional remedy when it "effectively required Petitioner to justify h[is] own detention that was unlawful from the start." Lopez-Morales v. Warden, No. 1:26-CV-02416 DAD SCR, 2026 WL 2018611, at *4 (E.D. Cal. July 13, 2026), report and recommendation adopted, No. 1:26-CV-02416-DAD-SCR (HC), 2026 WL 2078904 (E.D. Cal. July 17, 2026).

Respondent raises no arguments or otherwise engages with this core issue in the petition. For all these reasons, the undersigned concludes the second Mathews factor also favors Petitioner. See Charan S., 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The probative value of such additional procedural safeguards, including notice and a constitutionally compliant due process hearing to determine whether Petitioner's civil detention is justified, is high.").

////

**iii. Government Interest**

Assuming an IJ determined Petitioner presented a risk of danger and/or flight, the government undoubtedly has an interest in his continued detention. Charan S., 2026 WL 1144158, at *7. But the undersigned finds that interest is weakened here by the lack of any evidence that Petitioner presented a risk of flight or danger at the time ICE arrested him. Again, Respondent does not rebut Petitioner's statement that he complied with all bond conditions and did not submit a transcript or any other evidence from the post-deprivation bond hearing.

Although Respondent's response raises no arguments, it did include evidence that Petitioner was arrested on June 12, 2023, for domestic violence battery under Fla. Stat. § 784.03(1)(a)(2), and that the charges were dropped on July 20, 2023.[3] ECF No. 7-3 at 5-6. But because those events occurred *before* an IJ granted his release on bond in August 2023, they cannot amount to changed circumstances warranting his re-detention in November 2025. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (generally the government may only re-arrest a noncitizen upon a showing of materially changed circumstances), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); see also Y.S.G. v. Andrews, No. 2:25-CV-1884-SCR, 2025 WL 2979309, at *10 (E.D. Cal. Oct. 22, 2025) (holding due process compels a showing of a material change in circumstances before the re-detention of a noncitizen and citing cases). Accordingly, on balance, the final factor favors Petitioner.

**C. Remedy**

Having determined that the Mathews factors weigh in Petitioner's favor, the undersigned concludes that the government's failure to provide Petitioner with pre-deprivation notice and hearing before his re-detention in November 2025 violated due process. The Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." Id. at 129.

[3] Petitioner addresses this arrest at length in his petition and asserts he was attacked by his mother's allegedly abusive partner. See ECF No. 1 at 3-4, ¶¶14-15.

Here, where there is no individualized changed circumstances to justify re-detention, the undersigned finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty. The fact that Petitioner's removal order has become administratively final since he filed this petition may weigh against release. See Rodriguez Diaz, 53 F.4th at 1208 (the government has a strong interest in ensuring the successful implementation of removal orders). But in the absence of argument from Respondent, the undersigned finds any associated flight risks can be mitigated by standard conditions of supervision and an order expressly permitting Petitioner's re-detention upon commencement of the 90-day removal period. See 8 U.S.C. § 1231(a)(1)-(2). Accordingly, the undersigned recommends that the petition be granted on Count One and Respondent be ordered to immediately release Petitioner.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that Petitioner's motion to appoint counsel (ECF No. 2) is DENIED as moot.

Additionally, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted on Count 1.[4]

2. Respondents be directed to IMMEDIATELY RELEASE Petitioner Christian Daniel Rodriguez Gonzalez (A# 240-354-565) from custody. Respondent may place Petitioner on standard conditions of supervision.

3. Respondents be ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including notice and a hearing before a neutral fact-finder where Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have his counsel present.

4. Any order adopting these findings and recommendations include language that they do not address the circumstances in which Respondents may detain Petitioner in the event

[4] In the interests of judicial economy, any remaining claims in the § 2241 petition are not addressed herein.

Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

5. Respondent be further directed to file a notice certifying compliance with the above provisions within seven (7) days from the date of any order adopting these findings and recommendations.

6. The Clerk of the Court be directed to:

a. Serve a copy of a final order in this matter on the Central Valley Annex; and

b. Enter judgment in Petitioner's favor and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 14, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE